OPINION
{¶ 1} Defendant-appellant Elgin Wilson, III, appeals from his conviction and sentence, following a no-contest plea, on one count of Aggravated Murder, one count of Aggravated Robbery, each with firearm specifications, and two counts of Having a Weapon Under a Disability. Wilson contends that the trial court erred by accepting his plea without determining that it was knowing, voluntary and intelligent.
 {¶ 2} We conclude that the record supports the trial court's conclusion that Wilson's plea was knowing, voluntary and intelligent. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} Wilson was originally charged by indictment with one count of Aggravated Murder, one count of Aggravated Robbery, each with firearm specifications, two counts of Having a Weapon Under a Disability (predicated upon prior Drug Abuse offense), and one count of Having a Weapon Under a Disability (predicated upon a prior offense of violence within the past five years).
 {¶ 4} After several pre-trial proceedings, including a motion to suppress evidence, which was denied, and two evaluations of Wilson's competency to stand trial, in both of which he was found competent, Wilson entered into a plea bargain with the State wherein the State would dismiss the count of Having a Weapon Under a Disability predicated upon a prior offense of violence, the State would agree to remain silent at sentencing, and Wilson would plead no contest to the remaining counts and specifications.
 {¶ 5} Wilson appeared with his counsel at a plea hearing. After a colloquy, Wilson tendered his plea of no contest, which the trial court accepted. Later, Wilson appeared at a sentencing hearing, at which an appropriate sentence was imposed. From his conviction and sentence, Wilson appeals.
 II {¶ 6} Wilson's sole assignment of error is as follows:
 {¶ 7} "THE DEFENDANT DID NOT MAKE A KNOWING, VOLUNTARY, AND INTELLIGENT PLEA BECAUSE, INTER ALIA: (1) HIS LIMITED MENTAL CAPACITY AND LACK OF EDUCATION MADE IT IMPOSSIBLE FOR HIM TO UNDERSTAND THE CHARGES AS RECITED BY THE PROSECUTOR, LADEN AS THEY WERE WITH LEGAL TERMS OF ART; AND (2) THE DEFENDANT'S PROFOUND IGNORANCE OF HIS CONSTITUTIONAL RIGHTS RENDERED THE COURT'S ROUTINE STATEMENTS AS TO THOSE RIGHTS DEFICIENT."
 {¶ 8} In order to ensure that a defendant's plea of no contest or guilty to a criminal charge, whereby the defendant waives the many rights he enjoys under both the United States and Ohio constitutions, Crim.R. 11(C)(2) requires the trial court to address the defendant personally and do all of the following:
 {¶ 9} "(a) Determin[e] that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
 {¶ 10} "(b) Inform * * * the defendant of and determin[e] that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
 {¶ 11} "(c) Inform * * * the defendant and determin[e] that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."
 {¶ 12} Wilson acknowledges that the trial court, during the plea hearing, covered all of these matters, and obtained appropriate responses from Wilson. Wilson argues, nevertheless, that as a result of his low intelligence — a measured Intelligence Quotient of 78 during one of the competency evaluations — his rote responses during the plea hearing are insufficient to establish that he in fact possessed the understandings required by Crim.R. 11(C)(2).
 {¶ 13} In our view, the record contains a sufficient basis for the trial court to have made the determinations of Wilson's understanding required by Crim.R. 11(C)(2). Near the beginning of the plea colloquy, the trial court ascertained that Wilson had only progressed as far as the ninth grade in school. The trial judge who took the plea was not the judge who presided over other aspects of this case. Therefore, it is uncertain whether the judge who took the plea knew that Wilson had an I.Q. of 78. But it is clear that the judge taking the plea knew that Wilson had a limited education.
 {¶ 14} Immediately after ascertaining Wilson's level of education, the trial court made the following statement to him:
 {¶ 15} "THE COURT: I want you to keep the Court's forms in front of you as we go over your rights. If — but if there's anything on those forms that you don't understand or if you have any questions about anything I have said or about anything that's going on here today, I want you to stop me immediately and let me or your lawyer know. Okay?
 {¶ 16} "THE DEFENDANT: Yes, sir."
 {¶ 17} Shortly, thereafter, the colloquy continued as follows:
 {¶ 18} "THE COURT: Do you understand these charges of aggravated murder, aggravated robbery, each with a gun specification, and of weapon under disability, two counts, do you understand the nature and what those charges are all about?
 {¶ 19} "THE DEFENDANT: Yes, sir.
 {¶ 20} "THE COURT: Have you discussed these charges with your attorney as well as talking to him about whether you should go to trial or whether you should plead, whether you have any defenses, whether you should file any motions, and everything you need to talk to him about?
 {¶ 21} "THE DEFENDANT: Yes, sir.
 {¶ 22} "THE COURT: Are you satisfied with the assistance and representation you have received from your lawyer?
 {¶ 23} "THE DEFENDANT: Yes, sir.
 {¶ 24} "THE COURT: Prosecutor has agreed to dismiss one charge of weapon under disability and to remain silent as far as the State is concerned on behalf of sentencing. But is there anything else that they have made any promises to you or threatened you in any way, anything about the sentence or about anything to get you to plead guilty?
 {¶ 25} "THE DEFENDANT: No, sir.
 {¶ 26} "THE COURT: Well, has anyone promised you anything or about the sentence or anything or threatened you in any way to get you to plead no contest — I'm sorry, I said guilty [sic] — to plead no contest to these charges?
 {¶ 27} "THE DEFENDANT: No, sir.
 {¶ 28} "THE COURT: You understand you are not eligible for community control and you're not eligible for judicial release on these charges?
 {¶ 29} "THE DEFENDANT: Yes, sir.
 {¶ 30} "THE COURT: Let me explain the maximum penalties to you. Do you understand that a charge of aggravated murder carries a sentence of life imprisonment with no eligibility nor consideration for postrelease control until after serving 20 years, and there's a gun specification here so that adds three years which must be served prior to and consecutive with the aggravated murder? So that means on that particular charge, the sentence would be at least 23 years and not more than life. Do you understand that?
 {¶ 31} "THE DEFENDANT: Yes, sir.
 {¶ 32} "THE COURT: And do you understand the aggravated robbery carries a penalty of up to 10 years in prison, plus there's a gun specification on that which must be served prior to and consecutive with, so that sentence could be up to 13 years in prison? Do you understand that?
 {¶ 33} "THE DEFENDANT: Yes, sir.
 {¶ 34} "THE COURT: And the weapon under disability, being a felony of the fifth degree, each one of those carries a penalty of one year in prison. Do you understand that?
 {¶ 35} "THE DEFENDANT: Yes, sir.
 {¶ 36} "THE COURT: And do you understand that the fine for aggravated murder could be up to $20,000 and costs, and the fine for aggravated robbery and that the financial sanctions or fines for weapon under disability, each one of those is up to $2,500 and costs? Do you understand that?
 {¶ 37} "THE DEFENDANT: Yes, sir.
 {¶ 38} "THE COURT: So do you understand the worst-case scenario, that is if the charges were all run consecutive, or one after the other, the penalty could be up to 38 years to life in prisonment [sic]?
 {¶ 39} "Did I calculate that right, Mr. Deschler? Twenty-three plus 13 plus two.
 {¶ 40} "MR. DESCHLER [representing the State]: If they were run consecutive.
 {¶ 41} "THE COURT: That's what I'm saying is the worst possible penalty. It's not less than 38 years in prison to life in prison. Do you understand that?
 {¶ 42} "THE DEFENDANT: Yes, sir.
 {¶ 43} "MR. DESCHLER: One thing I believe on the agg murder, you said that the fine was $20,000. I believe it's $25,000.
 {¶ 44} "MR. GABEL [representing Wilson]: That's correct.
 {¶ 45} "THE COURT: Do you understand for financial sanction or fines could be up to $50,000 plus costs and restitution?
 {¶ 46} "THE DEFENDANT: Yes, sir.
 {¶ 47} "THE COURT: Do you understand that, sir? And do you understand that following your release from prison, you shall be required to serve a period of postrelease control for up to five years, but for any violation of that postrelease control, the adult parole authority, without coming back to this court, can extend the length of your parole, or impose a harsher sentence, which could include up to an additional 50 percent of your sentence in prison, and if that violation is because you committed a new felony, in addition to any sentence you receive on the new felony, you could receive in prison the remaining time left on your postrelease control or one year, whichever is greater? Do you understand that?
 {¶ 48} "THE DEFENDANT: Yes, sir.
 {¶ 49} "THE COURT: You must also understand, sir, that when you enter pleas of guilty, you're giving up certain rights. Do you understand you have the right to a jury trial where all 12 of the jurors must agree as to your guilt and, if relevant, to the presence of certain sentencing factors, and that whether you're tried to a jury or you give up that right and you're tried to a judge, that the State must prove your guilt and those sentencing factors beyond a reasonable doubt? Do you understand, sir?
 {¶ 50} "THE DEFENDANT: Yes, sir.
 {¶ 51} "THE COURT: And do you understand that you have the right to face those who accuse you of these crimes and to have your attorney question or cross-examine them about anything they've testified to and that you can force or compel or subpoena witnesses in your own behalf to attend and to testify and that you have the absolute right to remain silent, which means that you cannot be forced or compelled to make any statement against yourself?
 {¶ 52} "THE DEFENDANT: Yes, sir.
 {¶ 53} "THE COURT: Sir, do you understand that pleas of guilty are — I'm sorry. Do you understand that a plea of no contest is a statement that you do not wish to contest or dispute or disagree with the facts that are stated in the indictment and will be stated here momentarily by the prosecutor, and if those facts state a charge that you then will be found guilty of the charges of aggravated murder with a gun specification, aggravated robbery with a gun specification, and two counts of weapons under disability with a gun specification [sic]?
 {¶ 54} "THE DEFENDANT: Yes, sir.
 {¶ 55} "THE COURT: And, sir, do you understand the charges, the penalties, all these rights? And do you wish to give up these rights today and enter pleas of guilty those charges — or pleas of no contest to those charges as I've stated?
 {¶ 56} "THE DEFENDANT: Yes, sir."
 {¶ 57} At this point, at the trial court's request, the prosecutor recited the Aggravated Murder count in the indictment. The colloquy then continued:
 {¶ 58} "THE COURT: That is the charge, sir, of aggravated robbery. Do you understand what the prosecutor said?
 {¶ 59} "MS. DROESSLER: Murder.
 {¶ 60} "THE COURT: Aggravated murder. I'm sorry. Thank you. Do you understand everything the prosecutor said?
 {¶ 61} "THE DEFENDANT: Yes, sir.
 {¶ 62} "THE COURT: At this time do you wish to contest or dispute any of those facts?
 {¶ 63} "THE DEFENDANT: No, sir."
 {¶ 64} The trial court then elicited from the prosecutor a recitation of the specification to the Aggravated Murder count, the Aggravated Robbery count, the specification to that count, and each of the Having a Weapon Under a Disability counts, as contained in the indictment. After each recitation, the trial court asked Wilson if he understood everything the prosecutor said, obtained an affirmative response, then asked Wilson if he wished to contest or disagree with any of those facts, and obtained Wilson's negative response. The colloquy then continued as follows:
 {¶ 65} "THE COURT: Mr. Wilson, do you understand that upon accepting your plea and making a finding of guilty, the Court will refer the matter for a presentence investigation and Judge Hall would be making the ultimate sentencing decisions?
 {¶ 66} "THE DEFENDANT: Yes, sir.
 {¶ 67} "MR. GABEL: Your Honor, if I may. I apologize for interrupting. Just for the record, for purposes of appeal, I want the record to be clear that his failure to contest or to question any fact from the prosecutor should not be seen as admission of any guilt. He stands on the no-contest plea.
 {¶ 68} "THE COURT: Right. He's just making the decision at this time not to contest.
 {¶ 69} "MR. GABEL: I want to make sure when it goes upstairs they understand.
 {¶ 70} "THE COURT: They will.
 {¶ 71} "Then my question to you, Mr. Wilson, is do you understand the charges, the penalties, and all these rights? And do you wish to give up these rights today and enter pleas of guilty to those charges — sorry. Let me start it all over again.
 {¶ 72} "You understand the charges, the penalties and all these rights, and do you wish to give up these rights today and enter pleas on no contest to all those charges as read by the prosecutor?
 {¶ 73} "THE DEFENDANT: Yes, sir.
 {¶ 74} "THE COURT: You've had the Court's plea form in front of you. And I've gone over all these rights with you. If you understand all these rights as well as the charges and the penalties and wish to give up all the rights that are on the form and as I've explained to you and enter pleas of no contest to those charges, if you would please sign where it says `defendant' on each one."
 {¶ 75} There then ensued a discussion of scheduling the sentencing hearing, after which the colloquy continued:
 {¶ 76} "MR. GABEL: Your Honor, also for the record, the plea forms which you have made reference to which is now being given to you, those were furnished to my client prior to the case being called to the Court and I believe Elgin had an opportunity to review that. Is that correct, Elgin? You had a chance to look at the forms before the case came up here. Right?
 {¶ 77} "THE DEFENDANT: Yes, sir.
 {¶ 78} "THE COURT: Mr. Wilson, I see on every form where you have signed them. But before I proceed, is there anything that you do not understand, or do you have any questions of me or of your lawyer about anything I've said or about anything that's going on here today?
 {¶ 79} "THE DEFENDANT: No, sir."
 {¶ 80} Whereupon, the trial court elicited Wilson's plea of no contest to each of the charges and specifications, found that he understood the waivers of his rights, the nature of the offenses, the maximum penalties that could be imposed, that Wilson was not eligible for community control or judicial release, and that he might be required to pay a fine and restitution. The trial court further found that Wilson understood the effects of his pleas, that the pleas were made voluntarily, and that there was a factual basis for the pleas. The trial court then accepted the pleas.
 {¶ 81} In our view, the record furnishes a sufficient basis for the trial court to have determined that Wilson tendered his no-contest pleas knowingly, voluntarily, and intelligently. Short of reading Wilson's mind, there is nothing more that the trial court could have done, or that we can do, to determine that Wilson's pleas were knowing and voluntary.
 {¶ 82} Wilson contends that his limited intellectual capacity prevented him from understanding either the nature of the charges against him or the constitutional rights he was waiving by his plea. We find nothing in this record to support that contention. He was afforded ample opportunity to consult with his attorney before the plea hearing, to indicate his lack of understanding at any time during the plea hearing, to ask any questions he might have of the trial court or of his counsel during the plea hearing, or to do so at the end of his colloquy with the trial court. He indicated no uncertainty during the plea hearing.
 {¶ 83} In support of his argument, Wilson refers to statements in his competency evaluation indicating his limited understanding of legal proceedings. As the State points out, Wilson's competency evaluations preceded the plea hearing. At the plea hearing, the trial court was at pains to make sure that Wilson understood all of the necessary concepts, and that he had the opportunity to inquire concerning anything said during the hearing that he did not understand. The record also reflects that Wilson's attorney had gone over all these matters with him before the hearing.
 {¶ 84} Wilson claims that he could not have understood the prosecutor's recitation of the charges and specifications, couched as they were in the words of the indictment, containing terms of art. But these recitations contained all the essential facts of the offenses. Although the recitation of the Aggravated Murder count contains a reference to Aggravated Robbery, as the predicate offense for the Aggravated Murder, the Aggravated Robbery count was itself recited, and this recitation included all the essential facts comprising that offense. Given that the nature of these charges and specifications had previously been explained to Wilson by his attorney, we do not find it incredible that he understood them when he was asked whether he understood them, and replied affirmatively.
 {¶ 85} Wilson's sole assignment of error is overruled.
 III {¶ 86} Wilson's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
Wolff and Donovan, JJ., concur.